```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LENROY MCLEAN,

                        Petitioner,
                                                            MEMORANDUM & ORDER
          - against -                                           11-CV-0401 (RRM)

DUKE TERRELL - WARDEN

                        Respondent.
------------------------------------------------------------------------X
```

**ROSLYNN R. MAUSKOPF, United States District Judge.**

Petitioner Lenroy McLean ("Petitioner"), who is currently incarcerated at the Federal Correctional Institution Medium I in Adelanto, California (*see* Notice of Change of Address, Mar. 18, 2011 (Doc. No. 4)), filed this *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 while incarcerated at the Metropolitan Detention Center located in Brooklyn, New York. Petitioner claims, *inter alia*, that he was denied due process at a disciplinary hearing resulting in a finding that petitioner participated in a group demonstration while he was held at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). He seeks to (1) reinstate twenty-seven days of good conduct time taken; (2) expunge the incident report; and (3) be transferred back to a facility closer to his family. (Am. Pet. for Writ of Habeas Corpus ("Am. Pet.") (Doc. No. 7) at 11.) For the reasons set forth below, petitioner's claims are without merit and his amended petition is DISMISSED in its entirety.

## BACKGROUND

I.     THE CEREMONIAL MEAL

Bureau of Prisons policy states that the chaplain may arrange for inmate religious groups to have one appropriate ceremonial or commemorative meal each year, and that an inmate may attend one religious ceremonial meal in a calendar year. *See* 28 C.F.R. § 548.20(c) (2012); Program Statement P5360.09, *Religious Beliefs and Practices* 19-20, Federal Bureau of Prisons (Dec. 31, 2004) ("BOP Program Statement P5360.09").[1] In September 2009, the FMC Devens Chaplaincy preapproved the menu for the annual Rastafarian ceremonial meal for the fiscal year of 2010. (*See* Declaration of Nicole McFarland ("McFarland Decl.") (Doc. No. 15) Ex. A, at 021.) On July 23, 2010, a group of inmates identifying with the Rastafarian faith, including petitioner then housed at FMC Devens, entered Chaplain Prickett's office to voice concern that the preapproved meal would consist of haddock, which they believed was an unclean scavenger fish and thus inappropriate for the Rastafarian diet. The inmates indicated that they would not eat the haddock and began to negotiate with Chaplain Prickett, seeking a new date for the ceremonial meal with red snapper, or to have Food Service cook them a pot of rice and peas for the originally scheduled meal. (*Id.*; *see also* Am. Pet. at 6.)

Chaplain Prickett told the group of inmates that the ceremonial meal memo and one ritual food item for each faith group were approved in September 2009, and that he would check with Food Service staff on whether they obtained the approved ritual item for the Rastafarian group. (*See* McFarland Decl. Ex. A, at 021.) Later in the day, Chaplain Prickett reconvened with the inmates in the chapel to inform them that haddock was the preapproved ritual item, and that the rest of the food items in the meal were from the master menu for the day. Chaplain Prickett also told the inmates that all previous ceremonial meals for other faith groups in the same fiscal year

---

[1] Available at http://www.bop.gov/policy/progstat/5360_009.pdf (last accessed June 26, 2012).

had received the same treatment consisting of one preapproved ritual food item and what was on the master menu for the day of the meal.[2] According to Chaplain Prickett, one of the inmates confronted the chaplain, asking: "Will you admit to us that the fish being served today is a scavenger fish?" After asking the inmates present if they were planning to eat their ceremonial meal at the scheduled time and getting several negative responses, the chaplain offered to wait five minutes in case any inmate wanted to walk with him to Food Service facilities to eat the meal. The inmates refused. (*See id*. at 022.)

Chaplain Prickett informed Food Service Administrator Lohmann of what had transpired, and Lohmann in turn advised Acting Captain Ortiz of the situation. Lohmann and Ortiz came to the chapel where inmates of the Rastafarian faith group were gathered and warned them that if they continued to boycott the ceremonial meal, their actions could be considered a group demonstration and have an adverse effect on the Rastafarian community. (*See id*. at 006.) Around 3:25 p.m., roughly an hour after the original scheduled meal time, the inmates collectively decided to leave the chapel and participate in the ceremonial meal. (*See id*. at 022.)

Petitioner concedes he was present in the chaplain's office and chapel but contends he remained silent during the incident. (Am. Pet. at 8.)

On August 19, 2010, after investigating the incident, Special Investigative Agent ("SIA") Brown wrote an incident report, charging Petitioner with the prohibited act of engaging in or encouraging a group demonstration and referring the charge to the Discipline Hearing Officer ("DHO") for further hearing. Petitioner was provided a copy of the incident report on the same day, according to Bureau of Prisons ("BOP") records. (*See* McFarland Decl. Ex. A, at 008, ¶

---

[2] In compliance with Bureau of Prisons policy, all ceremonial or commemorative meals must be prepared from food items on the institution master menus, but chaplains may use a small portion of the annual Chaplaincy Services budget to acquire traditional/ritual foods that are consistent with faith groups' religious dietary laws to supplement ceremonial meals. BOP Program Statement P5360.09 at 20.

3

24.) According to SIA Brown's incident report, Petitioner indicated to him that weeks prior to the ceremonial meal, Petitioner and several other inmates had questioned Chaplain Prickett about the items on the ceremonial meal but never received an answer. (*See id*. at 006.) On August 23, 2010, as he acknowledged with his signature, Petitioner was advised in writing by a BOP staff member of his rights before the DHO, including but not limited to the right of representation by a staff member and the right to call witnesses. (*See id*. at 026.)

## II.  DHO HEARING AND REPORT

A disciplinary hearing was held on September 8. DHO Amico issued a written report dated September 28, 2010, finding that Petitioner had engaged in or encouraged a group demonstration in violation of disciplinary code 212,[3] and imposing a sanction of twenty-seven days of good conduct time deduction, fifteen days of disciplinary segregation, and recommended transfer to another facility. (*See id*. at 001-004.) The DHO found that Petitioner rejected the meal and encouraged others not to partake in it, that he entered Chaplain Prickett's office to question, challenge and negotiate with him, and that he refused to leave the chapel and go to the dining hall. (*See id.* at 002-03.) In making his findings, DHO Amico explained that he relied specifically on the Incident Report, SIA Brown's Report, and memos from staff members Angela Inman, the Religious Services Assistant, and Chaplain Prickett. (*See id.*.) DHO Amico also specifically considered Petitioner's position during the disciplinary hearing that Petitioner did not say anything during, encourage anyone in, or had anything to do with a group demonstration, but gave greater weight to the statements of SIA Brown and Chaplain Prickett charging that Petitioner had vocally participated in the protest. (*See id.*.) DHO Amico concluded that

---

[3] The BOP's disciplinary coding system for prohibited acts committed by inmates and available sanctions categorizes the acts into four severity levels, ranging from codes starting in "1" and signifying the greatest severity to codes starting in "4" and signifying low severity. Code 212, which signifies engaging in or encouraging a group demonstration, falls in the second highest severity level of prohibited acts. *See* Inmate Information Handbook 65-73, Federal Bureau of Prisons (Revised Jan. 2012), available at
http://www.bop.gov/locations/institutions/spg/SPG_aohandbook.pdf (last accessed June 26, 2012).

4

Petitioner's continued presence during the incident with other inmates of the Rastafarian group–who had vocally protested the meal at Chaplain Prickett's office, attempted to negotiate for a different fish and, despite Chaplain Prickett's request, refused to leave the chapel and eat the ceremonial meal at the scheduled time–showed Petitioner's support of and participation in the group demonstration, (s*ee id*..) and that Petitioner did not present sufficient evidence to the refute the disciplinary code violation. (*See id*. at 004.)

DHO Amico noted in his written report, and Petitioner does not dispute, that at the disciplinary hearing, Petitioner was read his due process rights by the DHO and stated he understood those rights. At no point during the hearing did Petitioner raise any procedural issues, request staff representation, or present written documentation as evidence. (*See id*. at 002.) While the form entitled "Notice of Discipline Hearing Before the DHO" issued to Petitioner reflects that he wished to call witnesses at the hearing, (*see id*. at 024), the undisputed record also reflects that Petitioner waived his right to call witnesses by signing a Waiver of Rights one day before the disciplinary hearing took place. (*See id*. at 025.)

### III. ADMINISTRATIVE APPEALS

On October 1, 2010, Petitioner appealed the DHO's findings to the Regional Director and argued, among other things, that he did not have a fair hearing because the DHO was biased and failed to call witnesses. (*See* McFarland Decl. Ex. B, at 028-029.) The Regional Director found the contention to be not credible and pointed to Petitioner's waiver of his right to call witnesses at the DHO hearing, as reflected by his signature on the waiver of rights form. (*See id*. at 030; *see also* McFarland Decl. Ex. A, at 025.) the Regional Director denied Petitioner's appeal of the DHO's findings on November 10, 2010. (*See* McFarland Decl. Ex. B, at 028-031.) Petitioner's

5

November 27, 2010 appeal of the Regional Director's decision was denied by the Central Office on February 16, 2011. (*See id*. at 032-34.)

## IV. *HABEAS* PETITION

On January 20, 2011, Petitioner filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 against the Office of the Attorney General while he was held at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"). (*See* Pet. for Writ of Habeas Corpus (Doc. No. 1).) Citing the petition's lack of clarity as to the nature of Petitioner's claims and the relief sought, the Court, in a February 17, 2011 Order, directed Petitioner to file an amended petition. (*See* Doc. No. 2.) Petitioner did so on April 15, 2011, raising the claims addressed herein[4] and seeking to (1) reinstate twenty-seven days of good conduct time taken; (2) expunge the incident report; and (3) be transferred back to a facility closer to his family. (Am. Pet. at 11.) On April 21, 2011, the Court issued an Order to Show Cause directing the government to show cause as to why a Writ of Habeas Corpus should not be issued . (*See* Doc. No. 8.) The government responded on July 15, 2011 (*see* Doc. No. 14) and Petitioner filed a reply on August 9, 2011. (*See* Doc. No. 16.) By motion filed September 30, 2011 (Doc. No. 18), Petitioner seeks to supplement his petition. The government has not responded to that motion.

---

[4] In his Amended Petition, Petitioner does not assert that he was denied due process during the DHO hearing. Instead, he argues that there is no BOP code or law that forbids an inmate from questioning the chaplain about or refusing to eat a religious meal, and even if there is such a code, there is "not a scintilla of evidence" as a basis for the DHO's decision. (Am. Pet. at 7.) However, during the administrative appeal process, Petitioner raised allegations that he was denied a fair hearing because DHO Amico failed to call his witnesses and that DHO Amico was biased. (*See* McFarland Decl. Ex. B, at 029.) Out of an abundance of caution, the Court will address the claims raised both on administrative appeal and in the Amended Petition.

**STANDARD OF REVIEW**

I. **STANDARD OF REVIEW UNDER 28 U.S.C. § 2241**

Title 28 of the United States Code, Section 2241 permits habeas corpus review for federal prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An inmate's challenge to the execution of his sentence by, for example, seeking to expunge disciplinary sanctions like the loss of good time credits from his record is properly brought in a § 2241 petition. *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001); *see also Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (matters challengeable under § 2241 include matters such as "prison disciplinary actions, prison transfers, type of detention and prison conditions") (citations omitted). However, prisoners must exhaust their administrative remedies prior to filing a petition for habeas relief, or else make a showing of "legitimate circumstances beyond the prisoner's control [that] preclude[d] him from fully pursuing his administrative remedies". *Carmona*, 243 F.3d at 634.

"It is well established the loss of good time credit as punishment for prison disciplinary offenses implicates a liberty interest protected by the Fourteenth Amendment." *Homen v. Hasty*, 229 F. Supp. 2d 290, 295 (S.D.N.Y. 2002) (*citing Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)); *see also Rahman v. Wingate*, 740 F. Supp. 2d 430, 431 (S.D.N.Y. 2010). The Supreme Court ruled in *Wolff* that a disciplinary hearing resulting in a revocation of a prisoner's good time credit satisfies the due process requirements of the Fourteenth Amendment if

> (1) the prisoner is provided written notice of the disciplinary charges at least twenty-four hours in advance of the hearing; (2) a neutral and detached hearing body conducts the hearing; (3) the prisoner is afforded an opportunity to present evidence and call witnesses as long as the presentation of evidence is not unduly hazardous to institutional safety or correctional goals; (4) the prisoner is granted assistance, if necessary, to understand and prepare a defense; and (5) the factfinder provides a written statement of the evidence relied upon in making its decision and the reasons for the decision.

*Homen*, 229 F. Supp. 2d at 295 (*citing Wolff*, 418 U.S. at 563-67); *see Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

The revocation of good time does not comport with "the minimum requirements of procedural due process," *Wolff*, 418 U.S. 539 at 558, "unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill*, 472 U.S. at 454. That is, the requirements of due process are satisfied if "'there was some evidence from which the conclusion of the administrative tribunal could be deduced....'" *Id*. at 455 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration,* 273 U.S. 103, 106 (1927)).

## DISCUSSION

### I. PETITIONER RECEIVED DUE PROCESS AS REQUIRED BY *WOLFF*

Petitioner received all of the process required by *Wolff* during the DHO hearing. First, he received written notice of the disciplinary charge on August 19, 2010, well before the required twenty-four hours advance notice for the disciplinary hearing held on September 8, 2010. (McFarland Decl. Ex. A, at 006, ¶15); *see Perez v. Terrell*, No. 08-CV-1373 (RJD), 2011 WL 198437, at *2 (E.D.N.Y. Jan. 20, 2011). Second, there is no evidence in the record supporting Petitioner's accusation that DHO Amico acted with bias in conducting the disciplinary hearing. *See Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (administrators serving as adjudicators are presumed to be unbiased absent rebutting evidence). DHO Amico did not conduct the investigation or serve as a witness during the DHO hearing. The DHO report gave a clear written account of the chronology of events leading up to Petitioner's disciplinary charge, as DHO Amico understood them based on the disciplinary hearing and documentary evidence. DHO Amico went on to address Petitioner's statement that he did not say anything or encourage anyone during the incident, and explained his finding that Petitioner had nonetheless engaged in

a group demonstration by going to the chaplain's office to protest the ceremonial meal, attempting to negotiate for a different fish, and refusing to attend the meal at the scheduled time despite the chaplain's request. (McFarland Decl. Ex. A, at 002-004.) Third, Petitioner was advised of his rights at the hearing by DHO Amico, and stated that he understood those rights, and was also afforded an opportunity to present evidence and call witnesses as reflected in the "Notice of Discipline Hearing Before the DHO" form issued. However, Petitioner voluntarily waived his right to call witnesses the day before the DHO hearing. (McFarland Decl. Ex. A, at 024-025); *see Bedoya v. Coughlin*, 91 F.3d 349, 352-53 (2d Cir. 1996) (finding plaintiff's failure at disciplinary hearing either to reiterate request for witness testimony or to object to close of hearing constituted a waiver of his right to call witnesses). Fourth, Petitioner cannot argue that he receive inadequate assistance in preparing a defense in advance of the disciplinary hearing, since he was informed of his entitlement to full-time staff representation at the DHO hearing but chose to represent himself instead. (*See* McFarland Decl. Ex. A, at 024.) Finally, DHO Amico provided to Petitioner a written statement of the evidence relied upon in making his decision and the reasons for the decision, a copy of which is attached as an exhibit in Petitioner's amended petition. (*See* Am. Pet. Ex. B.)

## II. THE DHO'S FINDINGS WERE BASED ON SUFFICIENT EVIDENCE

Petitioner's due process rights are satisfied if "'there was some evidence from which the conclusion of the administrative tribunal could be deduced....'" *Hill*, 472 U.S. at 455 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration,* 273 U.S. 103, 106 (1927)). The Second Circuit has interpreted the "some evidence" standard to require "reliable evidence." *Luna v. Pico,* 356 F.3d 481, 488 (2d Cir. 2004) (citations omitted); *Rodriguez v. Lindsay*, No. 09–CV–2915 (CBA), 2011 WL 2601448, at *3 (E.D.N.Y. June 30, 2011). In applying this standard, the

Court is not required to engage in an "examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (citations omitted) (emphasis added).

The DHO relied on the incident report, the investigative memorandum from SIA Brown, the report from staff member Inman who, along with Chaplain Prickett, had spoken to inmates in the chapel on the day of the incident; and the memorandum from Chaplain Prickett describing the events that transpired on that day. (McFarland Decl. Ex. A, at 002; *see id*. at 006-023.) Petitioner does not challenge the reliability of the evidence relied on by the DHO to reach his conclusion. Here, ample evidence supported the DHO's findings.

That record evidence reflects, and Petitioner does not contest, that Petitioner was part of the group of inmates that went to Chaplain Prickett's office to question him about the ceremonial meal and who collectively decided to boycott the meal, and instead, remain in the chapel and participate in their own religious ceremony. When Acting Captain Ortiz came to the chapel and explained to the inmates that their decision to continue the boycott could be considered a group demonstration, the inmates explained that they had already made the decision at an earlier time and did not leave the chapel until they were warned a second time of the potentially adverse disciplinary consequences of continuing their actions (*See id*. at 006.) Statements from Chaplain Prickett and staff member Inman support the incident report's description of events and point out that one inmate in the group had repeatedly questioned Chaplain Prickett in the chapel and asked him to admit in front of everyone that haddock is a scavenger fish. (*See id*. at 021-023.) While Petitioner maintains that his participation was silent throughout, his own statements corroborate his presence with the group of inmates in Chaplain Prickett's office and in the chapel on the day

10

of the incident, as well as his partaking in the collective decision to remain in the chapel and boycott the meal. (*See* Am. Pet. at 8-9.) As the DHO properly found, regardless of whether Petitioner said anything or not, his continued presence in the chapel with other inmate(s) who had asked the chaplain to admit in front of a group of inmates that haddock was a scavenger fish and verbally protested the meal showed that Petitioner contributed to and participated in a tense group dynamic that amounted to a group demonstration. Petitioner's participation in the group demonstration was further bolstered by his decision to remain with the inmates in the chapel, rather than leave with the chaplain to attend the ceremonial meal at its scheduled time like the chaplain suggested. As such, the DHO's findings are supported by "some evidence" and satisfies due process. *See Harrison v. Querns*, No. 06-CV-0296F, 2008 WL 495505, at *4 (W.D.N.Y. Feb. 21, 2008) (regardless of whether inmate was an instigator or a mere participant in work stoppage, misbehavior report and inmate's testimony during disciplinary hearing admitting to participation in a work stoppage constitute "some evidence" and satisfy due process); *see also Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001) (sole testimony from reliable confidential informant confirming inmate's role as a food strike organizer satisfies the "some evidence" standard).

### III.     PETITIONER WAS PROPERLY CHARGED UNDER BOP RULES

Petitioner also claims he was punished for conduct not proscribed by the Bureau of Prisons and/or was improperly charged under the BOP's own policies. In this regard, Petitioner first contends that there is no Bureau of Prisons regulation, Code of Federal Regulation provision, or other rule or law that punishes an inmate for refusing to eat a ceremonial meal that does not comply with his religious dietary restrictions. (*See* Am. Pet. at 7.) However, Petitioner was found to have violated prohibited act 212, "engaging in or encouraging a group

demonstration." (*See* McFarland I Decl. Ex. A, at 002.) As discussed above, DHO Amico found sufficient evidence of this charge. Thus, Petitioner's claim that he was disciplined for another charge is without merit.

In addition, Petitioner relies on the BOP's Inmate Information Handbook to argue that in order for him to be charged with prohibited act 212 for engaging in or encouraging a group demonstration, he must be, but was not, also charged with one of the disciplinary codes for interfering with a staff member in the performance of duties (codes 198, 298, 398, and 498) or for conduct which disrupts (codes 199, 299, 399, and 499). (*See* Reply to Resp't's Resp. (Doc. No. 16) at 4-5.) The relevant passage from the Inmate Information Handbook states the following:

> When the prohibited act is Interfering with a Staff Member in the Performance of Duties (Code 198, 298, 398 or 498) or Conduct Which Disrupts (Code 199, 299, 399, or 499), the DHO or UDC must specify the severity level of the conduct that is most comparable to an offense(s) at that severity level.
> Example: "I find the act of Conduct Which Disrupts (Code 299) to be of High severity level, most comparable to the prohibited act of Engaging in a Group Demonstration (Code 212)."[5]

Petitioner's argument misconstrues the Handbook's guidelines and is without merit. This passage applies to the prohibited acts of interfering with a staff member in the performance of duties (codes 198, 298, 398 or 498) or conduct which disrupts (codes 199, 299, 399, or 499), and not the prohibited act with which Petitioner was charged.

## IV.  MOTION TO SUPPLEMENT

Moreover, by motion (Doc. No. 18), Petitioner seeks to supplement the record with an additional BOP Program Statement, No. 5270.09 and enacted after the filing of his petition, in support of his argument that a violation of disciplinary code 212 must also be accompanied by an

---

[5] Inmate Information Handbook 76, Federal Bureau of Prisons (Revised Jan. 2012), available at http://www.bop.gov/locations/institutions/spg/SPG_aohandbook.pdf (last accessed June 26, 2012).

additional charge as set forth in the above-cited passage from the Inmate Information Handbook. Petitioner's motion is granted, but his argument fares no better with this additional information. Once again, and in the same manner, Petitioner misconstrues Program Statement 5270.09: it applies to the prohibited acts of interfering with a staff member and/or conduct which disrupts, *not* the prohibited act of engaging in or encouraging a group demonstration under disciplinary code 212 with which Petitioner was charged.

## V. PETITIONER'S RELIGIOUS LIBERTY CLAIMS

Respondent argues that any religious liberty claims that Petitioner may have must be dismissed as unexhausted under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) as Petitioner has not filed a single complaint with the BOP alleging deprivation of his religious rights. (See Mem. in Resp. (Doc. No. 14) at 10-11.) To the extent that Petitioner alleges such claims, they must be dismissed as unexhausted for the reasons set forth in the government's response. *See, e.g.*, *Chen v. United States*, No. 09-CV-2306 (ARR), 2011 WL 203433, at 11 (E.D.N.Y. May 24, 2011) (inmate suits about prison rights are subject to the exhaustion requirement of the PLRA); *Warrender v. United States*, No. 09-CV-2697 (KAM)(LB), 2011 WL 703297, at *6 (E.D.N.Y. Feb. 17, 2011) (same). However, Petitioner's reply in support of his petition makes it clear that Petitioner does not intend to argue that his religious liberty was infringed by the DHO's decision. Instead, Petitioner's claim is that because he had a right to approach the chaplain about any concerns, and because his actions on the day of the incident did not violate any BOP policy, the DHO's finding was based on insufficient evidence and therefore denied him due process. (*See* Reply to Resp't's Resp. at 5-6.) Thus, no PLRA claims are at issue.

## **CONCLUSION**

For the reasons set forth here, it is hereby ORDERED that Petitioner's amended habeas corpus petition (Doc. No. 7) is DISMISSED. The Clerk of Court is directed to mail a copy of this Memorandum and Order to Petitioner, and close the file in this court.

Since petitioner has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L. Ed.2d 21 (1962).

SO ORDERED.

Dated: Brooklyn, New York
   June 27, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge